I'm doing pretty well, thank you. Good. All right, we'll start our arguments for the day with the case of United States, no let's see, Mack v. Klopotoski. May it please the court, Sara Ali Abadi for Plaintiff Appellant Derrick Mack and I'd like to reserve two minutes for rebuttal, please. It's granted. This court should reverse because Mr. Mack perfectly and strictly complied with the grievance procedures as written. Ms. Ali Abadi, what did DC ADM 804 specifically require here and what did your client do that he considers to be substantial compliance? Your Honor, DC ADM 804 required Mr. Mack to provide photocopies at the third final stage overview. Mr. Mack contends that that's exactly what he did when he submitted his documents to the first level overview. He submitted everything that was necessary, the second level and the third level overview and in fact the district court assumed that Mr. Mack did supply the required photocopies when he first submitted his documentation at the third level. What Mr. Mack contends is that he's strictly and perfectly complied with all the procedures at the first. So you're not arguing substantial compliance, you're arguing that he's strictly and perfectly complied? Your Honor, we're arguing both. We are arguing that he's strictly and perfectly complied with the procedures as written and that is what the court should look at. But even if the court looks at the additional request by Officer Watson for more copies of the appeal to the facility manager, which came after the three levels of review, even if the court looks at that, he still substantially complied with that request by providing his own originals. He got a notice that he had to supply copies or his appeal would be copies of other documents, I mean actual photocopies, but he failed to supply the appeal to the facility manager signed and dated, correct? That is what the prison contends, Your Honor, but actually the district court assumed that Mr. Mack provided the required documentation at all three stages of review. On page 20 of its opinion, which is at appendix page 48 to 49, the district court says even if Mack included the photocopies of his appeal, the fact is that he was informed they were missing. And in fact, the prison concedes that it can't prove Mack didn't attach the required documents, including the photocopies, to his appeal for final review. What we're looking at... So you're arguing burden here. You're arguing they had that burden and they didn't prove it, basically. That's true. They had that burden and they didn't prove it. It's their burden to prove that he failed to exhaust. But even if we look at their later request for additional copies, let's say they lost the copies that were provided and they asked. Mr. Mack also substantially complied with that under this court's jurisprudence. Mr. Mack provided his originals. Originals are better than photocopies, Your Honor. He was hand copied the particular form that was requested. Your Honor, the record refers to it as handwritten original copies. I think the most reasonable reading of the record is he didn't have any more photocopies after the whole process was done. So when Officer Watson asked him for his photocopies saying that they were missing, he just gave in his originals. But you can't say it as an original. He copied it at that point in time, did he not? Were they signed and dated from the original time frame? Your Honor, I believe they were. And honestly, the record is unclear. But he says he provided his handwritten originals. And whether he re-copied it out or more reasonably whether he just kept his original, my assumption here... But you're the moving party. Don't you have some obligation to tell us who's on first and tell us exactly what did happen here? Yes, Your Honor. And I mean, if you want to prevent a dismissal, you have to say, you know, this is what I did. It was my original. I did supply and they must have lost it. And they prevented me because the photocopy was broken. I mean, this is like a guessing game. We're supposed to make, the district court's making assumptions and you're saying that the defendant has to ferret out what happened here. It seemed to me if he wants to pursue his case, he's got obligations. And in response to a notice that talks about photocopying, he either has to provide that photocopy or at least alert the district court that a copier was broken. He didn't do that, did he? Well, Your Honor, first of all, the request that he received... Did he do that? Did he let the district court know the argument that is currently being made that the photocopier was broken? Did he say that? He said that he provided his original copies. And then later when it was claimed to be missing, he provided his, quote, original handwritten copies. That's on appendix page 260. That was in front of the district court. My question to you, did he say to the district court, I'm giving you my original handwritten because the copier was broken. I complained about it, but the prison did nothing about it. Did he say that to the district court? He did not link it up. He provided information that the copier was broken. And he also... He did? When did he say the copier was broken? It is at appendix page 253, Your Honor. And that was before the district court? Yes. After the ruling? At what stage? He didn't say that when he supplied the handwritten copies, did he? When he supplied the handwritten copies to the grievance officer? Yeah, okay, to the grievance officer. Sorry, yes. He didn't say it then, did he? That he is doing this because Xerox. No, he did not. And in fact, what was explicitly... The sequence here gets a little bit confusing, and in part it's because of the very detailed nature of this procedure and the various levels of it. But he was provided with a notice, was he not, from the Secretary's Office of Inmate Grievances and Appeals that has form language relative to including all complete documents and telling we had 10 working days to provide such documents. And then there's language at the bottom of that form about photocopying services. This is page 146 of 8-146. And it indicates your appeal to facility manager signed and dated is what was not included. What, if anything, did he do after receiving this suiga, I'll call it, form? After receiving that form, he went and within the 10 days allotted, he provided his original handwritten copies to the grievance officer, Officer Watson. That is what he did in response. Which you would have to agree were not what the policy requires. That is correct. That is correct. What the policy requires at the third level of review, which he maintains that he provided, is photocopies. So does all this come, does this case all come down to he said, they said? Does it all come down to my client claims that he attached these, the prison system says he didn't? Because if that's the case, every one of these cases eventually ends up in the U.S. District Court and maybe eventually the Court of Appeals. Because we're always going to have complainants, claimants who say, well, I just, no. Your Honor, at the very least. I'm sorry. At the very least, it is a he said, she said as to whether Mr. Mack complied with the third level of review. But more importantly, even if. Did he tell them? Yes. After receiving that notice that says your appeal to facility manager signed and dated is what was not included here and is required. Did he tell them, I gave you this already? Yes, he explained, he says that he did tell them that. Anything in writing to that effect? I'm sorry? Is there anything in writing to that effect? That he told them, I gave you this once already. Why are you asking for it? And where is that in the record? Your Honor, I don't have, I don't believe that there's anything in writing that, in the record from him to the prison. So the prison system, so the implication from that then is that the prison system had no opportunity to determine whether or not there was some administrative foul up, whether in fact within their process or within an office at the Secretary's Office of Inmate Grievances and Appeals, somebody lost an otherwise attached set of documents. They weren't alerted to that. I respectfully disagree, Your Honor. I think that. I'm asking, I'm asking. As to whether, when they were alerted, I believe there is a note in the record, and I can find that for you for rebuttal, that he says he explained to them that he, that he provided the copies, the original photocopies the first time around. And so I can try and find that for you, but. Yeah, that would be helpful if there's some kind of affidavit or something that puts the prison system on notice that they better rebut that. I believe so, Your Honor. But even if that's not the case, when he was then asked, he was asked for additional copies of these documents, and he went ahead and handed in his originals. And this court has actually never held that someone who did so many efforts as Mr. Mack here has failed to exonerate him. What are those so many efforts? According to the record, by December there was a new photocopier obtained, right? And we're talking about activity here that took place in January and February, the following year. You must look. Your Honor, I don't think that the record is clear that there was a new photocopier. There's a contention by the prison that there was a new photocopier, but it's not clear. And the district court never determined anything like that. The district court didn't determine that he could make a photocopy at that time, or even that he hadn't originally sent in his photocopies at the third level of review. The district court just assumed that. But even if you look at the additional request from Officer Watson, and you think of that as the grievance procedure, his provision of originals was enough to substantially comply. It doesn't have to be perfect. It doesn't have to be exact, according to the case law. Does substantial compliance, does that survive Woodford and Jones? Yes, Your Honor. How so? Who is the burden of proof on at the hearing before the district court? Who had the burden of proof of demonstrating substantial compliance? Your Honor, the prison has the burden of proof of demonstrating that Mr. Mack failed to exhaust. And as a result, the prison has the burden of proof. But it's enough to, for the prison system merely to raise its policy at that stage, isn't it? And the fact that what Mr. Mack did was not consistent with the policy. Isn't the burden of proof then on him to come back and demonstrate? Substantial compliance. Assuming that substantial compliance is even the jurisprudence of this court, which I'm not prepared to accept even prior to Woodford. There's certainly language in Judge Becker's opinion relative to substantial compliance, but I'd leave open whether it's part of the whole thing. Well, Your Honor, I believe your earlier question was whether it survives Woodford. And Woodford only requires that deadlines and other critical procedure rules be complied with. And here, we submit that this was not... There were no deadlines or critical procedure rules that Mr. Mack failed to comply with. Well, I think it would be one thing if the appeal or his case was dismissed because he didn't supply it. But once they have sent him an action required form that says what he has to do within 10 days in italics and will result in immediate dismissal of your appeal, you think he's being put on notice via this document? Makes it something that they really care about, a critical rule, if you will? Your Honor, I see my time is up. May I answer your question? We'll put another two minutes on, please. It's important. And we do appreciate counsel. We know you are pro bono. We appreciate your efforts and we want you to have the opportunity to get all your arguments out. But anyway, don't you think having been served with this, giving him 10 days, that that kind of puts up a red flag that if we're talking about what needs to be complied with, that this would be a critical rule? Your Honor, I don't think that it would make it a critical rule. It is outside of the written policies as specified in DCM 804. But even if it is a critical rule, he did substantially comply with that. Woodford v. NGO doesn't say that perfect compliance is necessary for all deadlines and critical procedure rules. It says proper. Proper exhaustion. It says proper exhaustion, yes. What is proper exhaustion? Proper exhaustion is that it's the notion that the prisoner cannot claim he has exhausted all those remedies if there is just no more process that is open to him, that he does have to comply with the deadlines and pursue the avenues available at each turn. I think the quote, Woodford states proper exhaustion requires, quote, using all steps that the agency holds out and doing so properly. End quotes. Correct, Your Honor. But proper does not mean perfect.  I don't think I saw original in the brief. I saw handwritten. I understood the brief as if he had copied out his original and sent them a copy of that. Your Honor, if that is the case, that is our misstep. Whether they are copies that he literally copied out by hand after the fact or whether they are original handwritten copies, which is the term that he uses in his papers, regardless, we're talking about two documents that literally just say, I would like to appeal such and such. We're not talking about a description of the events. These are fairly insignificant documents. And if the prison had any question, they already had a copy that was. Is it insignificant for the prison to want to know exactly what it was that was filed earlier, upstream in the process, and was providing notice to prison disciplinary officials at that stage? Your Honor, that's completely. Is that insignificant? No, it's not insignificant, but the prison already had the original appeals to the facility manager. No one is suggesting that at the second level of review, Mr. Mack did not file these two papers saying, I would like to appeal this grievance. And in fact, the prison responded. So we know they were aware. The only documents we're talking about are things that say, I would like to appeal this grievance. The person already knows that. But we don't know, for instance, you just said they have these things, but we don't know whether this system is just a tracking system or whether files are maintained. And here again, we're left to, you'd like to place a question mark and say, oh, well, they have them. But we don't have proof that they actually had this so that it would be kind of a no harm, no foul kind of rule. Do you have any proof that this, that they have a database that contains this so they really didn't need it anyway? We don't have proof that the automated system contains actual copies of this. What we do have is that he originally submitted the appeals to the facility manager and that that goes into the grievance file. And the policy says that these documents will be put into the grievance file. So we don't know where the grievance file, it may stay with the first step and never go to the second step. And he has the obligation. It may not be where the final appeal is being considered. And that is what the prison contends. But remember, we had, we had no discovery despite repeated requests for discovery. We had no counsel. We had, when you say repeated requests for discovery, he filed a motion for discovery that was declared moot because he didn't have to move. He just had to serve a request. Did he ever serve a request? Your Honor, he says. Plus the fact that the things he put in his motion would not have ferreted out this information in any event. But did he serve a request for discovery? He, the record does not reflect any requests for discovery that he actually served. There are no copies of that. However, in his various files to the district court, he references that defendants have failed, have refused, I'm sorry, to provide him with discovery. And that came after that motion for discovery was denied. So a fair reading of the record shows that he filed a motion for discovery, set forth some things that he wanted, not realizing that he didn't have to file with the district court. The district court denied that and said, you only have to serve on the defendants. And thereafter, he raised it to the district court long afterwards that he never received any discovery materials. And in one of those filings, he labeled it as discovery requests. So he fairly alerted the court that he'd been asking for these things. And although the particular things that he noted did not go to exhaustion, I think that construing all pro se filings in his favor, all inferences in his favor, it's fair to think that he was not provided with any discovery. And he says defendants have refused discovery, which may include exhaustion discovery. We don't know. All right, thank you. We'll hear from you again on rebuttal. Thank you. May it please the court. My name is Howard Hopkirk, and I'm with the Pennsylvania Office of Attorney General. And I represent the appellees, all of whom were employed by the Pennsylvania Department of Corrections at SCI Dallas. I'd like to, I feel the court does understand my basic arguments. So first, I wanted to try to clarify some of these factual questions. All right, that would be helpful. And then Judge Smith seems to like to have a test. And I think maybe I can provide him with something like that for the substantial compliance. Every now and then, I like rules sometimes. On 288A of the appendix, there is a cover letter. I'm sorry, what page? 288A of the appendix. There is a cover letter from Mr. Mack in which he was providing the handwritten copies of his, the miss, of the dated February 19, 2008. Yes. And that is the only communication regarding providing these handwritten copies. And conspicuously absent from this is any suggestion that you lost my earlier submitted copies. That's correct. And our position is to even get to the, an arguable substantial compliance issue, he would have had to, given some reason why, he was only providing handwritten copies. Mr. Hopkirk, the inmates request to staff member, these so-called handwritten copies or whatever in fact they were, and I agree with Judge Roth, it's kind of unclear in the One is dated December 20, 2007. The other is dated December 22, 2007. Now, we checked and interestingly, these dates are prior to the January 3, 2008 IRR decision. So these couldn't have even been in existence as originals or if they had been originals because they necessarily would have been prepared after the IRR decision. Am I right? Or when he was making the handwritten copies, he was mistaken about the date. Okay. I mean, I think that's probably the situation. And just for reference, the inmate request form, what I believe is those were forms that were readily available to him to have paper to make these handwritten copies to try to provide substantively what was in his original appeal. But it's missing the signed, you know, signed notations and the actual date. And as I suggested to the court in my brief, this court requires litigants to include copies of things, of lower court decisions, even though you could have your law clerks get on PACER and find the decisions. What's sauce for the goose is sauce for the gander. And my only point is there is a rational basis for this type of rule. And to also clarify, the third step of the final review is in Camp Hill, Pennsylvania, where the secretary of the entire Department of Corrections is located. And so this is a centralized final review process. It's away from the institution itself. The people involved in those decisions are different from the people who are defendants in this case and anyone at SCI Dallas. And so while copies might be in existence at SCI Dallas, that doesn't mean that they're put on a database and are easily accessible. Are you telling us they're not put on a database and are not easily accessible? I'm guessing somebody should be able to figure that fact out. It's not in the record, but I am telling you I will make that representation. What makes this, the supply of this appeal to the facility manager, what makes it critical that it be something other than a handwritten replication that contains all the same information but it's just not a photocopy? What makes that so critical? Well, I think it's a matter of sort of the best evidence and instead of requiring... But it's just a procedural filing. Wait a minute, Mr. Hopkins. What did the Commonwealth need to know that they did not know from what they received? What additional did they need to have learned from this copy that was provided on February the 19th? Well, I think as a system type thing, I can't speak to this case and they never reached the merits because of the procedural default, but things like whether it was timely, whether it was what the reasons were given for the appeal and for the denial of the appeal and things like that. But the appeal was, the intermediate appeal was decided on the merits, so if it wasn't timely, hadn't that been waived? I mean, there really is no issue that the intermediate appeal is timely because it was decided on the merits, correct? It was decided on the merits, but I think all the documents that are required together provide or something that can be used by the final reviewers. And I would also say, I don't think we're here... My concern is the document that was sent on February the 19th, that was a hand copied in reply to the request for the copy. And a hand written copy was sent on February the 19th. I gather it was accurate. Is there any contention that it wasn't accurate? Is there any information that absolutely the final appeal board had to have in order to determine the appeal on the merits? In this case, probably not, but as a... Well, isn't that substantial compliance then? No, Your Honor. Substantial compliance is following the requirements under DOC 804, and that required providing photocopies. And while in particular cases it may turn out that it's not important as a system-wide thing to have a unified review system, there is an importance to requiring these documents. Mr. Hopkirk, is that importance that the system has decided they want all of the relevant documents associated with the appeal process appended in one place for the reviewer at Camp Hill? I mean, is that essentially... That's essentially it. And I would say that Congress, in enacting the PLRA, said that these types of determinations, as later upheld and interpreted by the Supreme Court, these types of policies are not things to be second-guessed by the court. In fact, in Jones v. Beck, what the Supreme Court said was the level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it's the prison's requirements and not the PLRA that define the boundaries of proper exhaustion. What does that tell us about whether or not what we had here was proper exhaustion? Well, I think... It's the prison's requirements and not the PLRA. I mean, on its face, he did not properly exhaust. He had a claim that he actually included these photocopies in the original complaint. At that point, if the prison had done nothing and had just dismissed his complaint without giving him an opportunity to cure, then I think you very well might have a substantial compliance with the requirements. But in this case, the prison actually bent over backwards to try to allow him to... Okay, and he provided the information that was requested, but it was in handwritten rather than photocopied form. Is that... And it's our position that that is inadequate, especially if he had given a reason. If he had said, I'm providing these because the photocopier is broken and there's no way... I asked to get photocopies made and they say there's no way to make them. Then again, I think you might have substantial compliance. But one, I would say, as Judge Smith pointed out, the copier appears to have been fixed in December in response either to his complaints or other people's complaints, which was well before this. And second, the policy itself, as far as grievances goes, has a whole separate instructions about allowing inmates to approach their unit manager and other procedures to obtain photocopies. The idea that SCI Dallas, that has 1,500 prisoners and I don't know how many staff, only had one copier in the library and that was the only way to make copies for grievances just doesn't seem credible to me. Mr. Hopkirk, was substantial compliance the rule of this circuit even prior to Woodford? I mean, are you arguing with the assumption that substantial compliance was our rule? I'm not arguing that substantial compliance can exist, but I... In a word, as I see and read Nyhoos, Judge Becker's opinion, the holding is we hold that the PLR amended 1997 EA in such a way as to make exhaustion of all administrative remedies mandatory. And of course, this case was a futility exception case. But it's later in the opinion that the language emerges and it is just, we note our understanding that compliance with the administrative remedy scheme will be satisfactory if it is substantial. But the whole sentence begins, without embellishing, for the case law in the area will have to develop. We note our understanding. Is that part of the holding? And therefore, is it the rule? And if it was the rule, and I think Judge Rendell asked earlier about Woodford, what stands in the wake of Woodford? I think this panel can largely say what the rule for substantial compliance is. And I would say that apart from this case... What did you just say? That's our job? Yes. I think we know that. But you're here. We'd like to hear what you have to say. I want to give you the test I was promising you. I think a prisoner may properly argue substantial compliance where, one, it's impossible to comply with the requirements. You know, I don't know. And these are going to be narrow exceptions. But, you know, the prisoner was in a coma or incapacitated. So he couldn't meet the deadlines. That was just impossible. Second, corrections officials have actively prevented compliance, which is quite different from this case where they tried to facilitate compliance. And there are numerous cases from other circuits dealing with the intervention of prison officials, and they're making it impossible or impractical for a prisoner to utilize the grievances. And then the third would be the prisoner has decrementally relied upon the actions or statements of officials. So he reasonably believes he is in compliance where compliance is not necessary. But none of those three address the qualitative measure of substantial that defines compliance. You're talking about three circumstances that would excuse total compliance, but you haven't told us how you measure, from a qualitative standpoint, the compliance that he has done as compared to the compliance that might technically be required by the rules. Aren't you leaving something out? What you told us, okay, if we get that case, then we won't slap the prisoner on the wrist. We'll say, you know, you can proceed. But it's not really substantial compliance. It's that compliance was excused because it was impossible or he was prevented or he detrimentally relied. So what's the qualitative measure of the kind of critical rules, if you will, under the case law that would be substantial? Do you have an answer to that or a rule? I'm not sure what you mean by qualitative. What does substantial mean? Substantial is a term that defines the, you know, a quantity, a type, a quality of compliance. I think that there may be... It's not minimal. It's not perfect. There's a mistake in using the word substantial in its normal sense because I think the he had to do 15 things and he did 14 of them perfectly. Substantial is kind of good enough plus, maybe. Good enough for government work. Yeah, there you go. Good enough for government work. But good enough plus. Good enough times two. And that's what they're arguing. It was good enough. And we don't think that makes the test. That if the department has its guidelines that, you know, you can't come in and argue, well, I don't think number 15 is really that important and something like that. You have to say, they told me that it was okay for me to submit the handwritten copy. I mean, isn't the answer really that after Jones and Woodford, there probably isn't a substantial compliance? Or if there is, it's the prisoner's, it's the prison's definition of it. And not for judges, if you will. I'm surprised. I'm surprised that Judge Rendell is making the argument I expected to hear from you all morning that we showed deference to prisons. Isn't that what Woodford and some of the other cases are all about? Well, I think my test does show deference to prisons. I think if you want to adopt Judge Rendell's test, then we're certainly not going to. No, I'm not adopting. I'm just saying what Jones says. Okay. I see I'm out of time. And I would ask that the court affirm. Thank you. Thank you very much. Ms. Aliabadi? And I just have a few quick points. First, I'd like to address my promise earlier to look up in the record, my recollection of when Mr. Mack had explained to officials that he previously provided copies. What I was thinking of was on, is located on page 280 of the appendix. And it's Mr. Mack's own comment that he had already explained that his copies were already sent. But to help clarify the matter, he sent his handwritten original copy that was on form DC-135A in May at request of staff member. Okay. Thank you. Where is this? Page 280. It's 280. Thank you. And the document starts on 266. That's helpful. Second, I'd like to address opposing counsel's suggestion that there was no evidence in the record that there were other copies around the prison system that could have been looked at, copies of the appeal to the facility manager. Irrespective of the automated tracking system, if you look at the bottom of some of the prison documents to Mr. Mack, they themselves show they were CC'd to multiple people in the prison grievance system. For instance, page 321, 190 to 91, 289 to 89. And what does this show? I'm sorry, 287. What do Xerox copies prove? This just shows, Your Honor, that there are copies of prison documents relating to Mr. Mack's grievance in different places in the prison grievance system. Well, somebody CC's somebody else, but they could delete. I mean, you don't hold on to everything you get. Correct. Correct. And but one of these CC's is to grievance file. And so I just wanted to point out that there is some suggestion that there are other copies of the appeal to the facility manager elsewhere in the system that could have been consulted. Third, Your Honor, opposing counsel's suggestion that the prison bent over backwards in sending Mr. Mack this request from Officer Watson for additional copies. They asked for copies, not photocopies, and he provided copies. They actually could have done more. They could have asked specifically for photocopies before actually denying his appeal at the final stage. So there were more things the prison could have done. At the end of the day, Your Honor, the prison could always come up with extra requests for additional copies of documents saying they were missing, things that might confuse the prisoner. At the end of the day, his interpretation of that request and his provision of originals or original handwritten documents, whatever it was, was enough for substantial compliance. Looking at the exhaustion case law in all the different circuits and in the different courts within the circuit, the one thing that is common to everything is a focus on context and circumstance, whether it's an unavailability framework, whether it's a justification or excuse framework, or a substantial compliance framework. Ms. Alley and Bonnie, if I could take you back to the first point you made, which was to draw our attention to the documented portion of it, which is at A2A. Correct. The plaintiff, Mack, had already explained. This is a document filed with the district court, right? Yes. Is there anything in the record that has been identified that shows that, in writing, Mr. Mack notified the prison system during that process that they had lost documents? No, Your Honor. All right. Thank you very much. Thank you. And we thank Schneider, the Schneider firm, for undertaking this. Really, it was an excellent work product, and we appreciate it. The case is well argued. We'll take it under advisement.